Henry Myers Hale v. Commissioner.
Hale v. Commissioner
Docket No. 9069.
United States Tax Court
1947 Tax Ct. Memo LEXIS 201; 6 T.C.M. (CCH) 572; T.C.M. (RIA) 47146; May 27, 1947
*201 Roy M. Scott, Esq., 1106 Commerce Title Bldg., Memphis 3, Tenn., and W. G. Boone, Esq., for the petitioner. S. Earl Heilman, Esq., and John R. Stivers, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: This proceeding was brought for a redetermination of a deficiency of $54,960.10 in petitioner's income tax for 1941. The primary question turns upon the correctness of respondent's action in attributing to petitioner income asserted by petitioner to be allocable to his wife by reason of a family partnership arrangement. The parties submitted a stipulation of facts and evidence was adduced at the hearing. Pertinent facts taken from the stipulation will appear in the Findings. Findings of Fact The stipulated facts are hereby found accordingly. Petitioner is a resident of Albany, New York. His income tax return for 1941, the taxable year in question, was filed with the collector for the district of Tennessee. For 17 years prior to 1941, petitioner had been employed by the Caterpillar Tractor Company in various capacities, including that of Eastern sales manager, assistant sales manager, assistant treasurer, and treasurer. *202 As assistant treasurer and treasurer for a period of about 12 years he was an officer of that company in Peoria, Illinois. His total income in 1940 was $20,000. Prior to the year 1941, McCarthy, Jones, and Woodard Company of Memphis, a corporation, was the distributor of Caterpillar Tractor Company products in the Memphis territory. The business was managed by J. R. Taylor. During 1940 petitioner and his wife discussed with Taylor, with Mr. Woodard of McCarthy, Jones and Woodard, and with others the advisability of acquiring an interest in McCarthy, Jones and Woodard Company under an arrangement whereby petitioner would become an officer and manager of the corporation. It was decided that it was inadvisable to acquire such an interest, and subsequently McCarthy, Jones and Woodard Company was liquidated. Further negotiations also failed. In the fall of 1940 Taylor again urged that a plan be worked out to continue the business in Memphis. After clearing up some personal differences between petitioner's wife and Taylor's wife, further consideration was given to the matter. Petitioner went to Memphis for a conference with the interested parties, including a representative of the Union *203 Planters National Bank & Trust Company of Memphis. Petitioner was reluctant to leave his position with Caterpillar. The bank agreed to lend the new company, if formed, the estimated amount of necessary capital - $100,000; and the bank also agreed to lend petitioner his contribution of $50,000. Petitioner returned to Peoria and discussed the matter with his wife. He questioned whether it was the right thing to do inasmuch as his father was a large stockholder in the Caterpillar Company. He and his wife made an automobile trip to California and talked the matter over with his father. They were in the habit of making regular trips to California. Petitioner's father was not in accord with the arrangement of borrowing $50,000 capital from the bank, or with petitioner's wife raising money by disposing of her properties valued at $18,000 or $20,000, which she had in her own name at that time. He offered to lend the necessary money. Petitioner in the latter part of 1940 approached his employer, the Caterpillar Company, and obtained $60,000 from them to secure the parts inventory for the company, so that the new business would have the full $100,000 for actual working capital. On January 1, 1941, the *204 partnership of Taylor-Hale Machinery Company began operations. The investment in the business was $100,000. Its business was the sale, trade, and servicing of heavy equipment and road machinery, tractors, and like equipment. Under a contract with the Caterpillar Tractor Company it had the right to sell and service Caterpillar tractors in a number of counties in western Tennessee and northern Mississippi. About 22 people were employed by the Taylor-Hale Machinery Company in 1941. On January 6, 1941, J. R. Taylor, his wife, Bertha A. Taylor, and petitioner and his wife, Millicent H. Hale, executed an instrument, paragraphs 1 to 8 of which read as follows: "1. In accordance with verbal agreement reached in December, 1940 between the undersigned: J. R. Taylor, H. M. Hale, Bertha A. Taylor and Millicent H. Hale it is expressly agreed the four above named parties shall become equal partners in the operation of TAYLOR-HALE MACHINERY CO., a business engaged in selling, trading-in, repairing, and generally merchandising tractors, earth moving machinery, road machinery, engines, and such other goods, wares, and merchandise as from time to time may be agreed upon. "2. The business *205 is starting January 1, 1941, and is to be located in the City of Memphis, Tennessee, and such other places as may be agreed upon as being desirable. "3. The partnership shall continue until dissolved by mutual consent of the parties making up the partnership, or until death of one of the partners. In event of death of one of the partners, the surviving member of the family shall automatically acquire the interest of the deceased partner. The surviving partners shall then decide, utilizing such counsel and advice of bankers, attorneys, or others, as may be deemed desirable, as to whether or not a new partnership should be formed, or whether the interest of one or more of the partners should be acquired by purchase, or whether the business should be dissolved. "4. The partners' contribution to the capital of the partnership shall be equal, and shall be used for the support and management of the business for the mutual benefit and advantage of all partners. "5. All profits and losses shall be divided equally between the four partners. "6. The management of the business shall be invested in J. R. TAYLOR and H. M. HALE, who are hereby authorized on behalf of the partnership to enter *206 into such contracts, incur such indebtedness, and carry out such details of the business as may be required, and in so doing they shall extend their best efforts for the benefit of the partnership. It is agreed by BERTHA A. TAYLOR and MILLICENT H. HALE that they shall remain silent in the conduct of the business as long as there appears to be no evidence of mismangement on the part of the partners charged with the proper operation of the business. "7. J. R. TAYLOR and H. M. HALE shall, in addition to sharing equally with all partners any profits or losses of the business, receive equal salaries as shall be determined from year to year, as compensation for their services in managing the business. "8. Usual and customary books of account shall be kept properly posted and shall not be removed from the place of business of the partnership without the consent of both parties charged with the management of the business. Each partner shall have free access to the books of account at all times, and shall be at liberty to make such extracts therefrom as may be desired." The partnership form of business was agreed upon to avoid expenses and details of incorporation and eliminate the necessity *207 of qualifying in foreign states. It was the policy of the Caterpillar Tractor Company to insist that wives or other women be kept out of the active management of the business of its distributors. On December 28, 1943, W. J. McBrian, treasurer of the Caterpillar Tractor Company of Peoria, Illinois, addressed a letter to Mr. J. R. Taylor, reading as follows: "With reference to your question about our understanding of the respective ownership interests of the various partners of Taylor-Hale Machinery Co. between January 1, 1941 and January 1, 1943, while it acted as distributor of "Caterpillar" products in the Memphis, Tennessee area, it is true that we did understand from both you and Henry Hale that your respective wives held one-fourth interests in the partnership, but it was our agreement from the first discussions preceding inception of this partnership that the partnership arrangement would permit us to deal solely with the two men. "As you well know from your many years of experience in this industry it is very much a man's business, and in consequence we have repeatedly and consistently urged all distributors to keep their wives or any other women out of active management *208 of affairs of the distributorship. "We believe it is only good business to place sole responsibility for management in the hands of men well trained and long experienced in the machinery selling and servicing functions, and that no woman ever would be able to do as well in a managerial capacity as could a man of equal ability and experience. Hence we have felt it was both to our own and the distributor's best interests to keep active management out of the hands of women even though they were equal owners, as we understood was true in your case." J. R. Taylor and petitioner were actively engaged in the partnership business in 1941. Millicent Hale did not participate in the management of the business of Taylor-Hale Machinery Company. At times petitioner consulted with his wife concerning the business of the Taylor-Hale Machinery Company, discussing items on the monthly statement, the amount borrowed by the business, and other similar matters. She gave petitioner advice, some of which he chose to follow and some of which he chose not to follow. Millicent Hale also helped petitioner on such things as financial statements, checking inventories and writing letters, usually at their *209 home in the evening. She helped entertain customers of Taylor-Hale Machinery Company at their home, although that company paid for the food and other things necessary at dinner parties. Petitioner's wife had had some previous active business experience. She had been training as buyer and manager of the sportswear department of a New York department store; she had also engaged in real estate activity in Florida, and invested in a liquor and button manufacturing business in Arkansas. The cash book entries relating to investment in the Taylor-Hale Machinery Company are as follows: Jan. 7
Debit - Cash
$30,000
Credit - Investment, H.
M. Hale
$30,000
Jan. 17
Debit - Notes receivable
$50,000
Credit - Investment, J.
R. Taylor
$50,000
Jan. 17
Debit - Cash
$20,000
Credit - Investment, H.
M. Hale
$20,000
The source of the item of $20,000, above, under date of January 17, 1941, was Charles H. Hale of San Leandro, California, father of petitioner, who forwarded under date of January 13, 1941, to petitioner, two drafts, one in the amount of $16,100, and one in the amount of $3,900. The two drafts were accompanied by a letter addressed *210 to petitioner, which stated: "I enclose drafts for $16,100. - and $3900. -. The $3900. - is a gift. Sign note for $16,100. and return. * * * I take it that your new company is capitalized for $100,000. - outside of the property. * * *" Petitioner executed and delivered to his father a note dated January 15, 1941, in the amount of $16,100. Millicent H. Hale did not sign the note. The draft received from Charles H. Hale in the amount of $3,900 represented a gift from him to petitioner. Repayments on the principal of the note executed by petitioner on January 15, 1941, payable to Charles H. Hale, were made as follows: Date
Amount
April 14, 1941
$ 100.00
June 3, 1942
100.00
June 20, 1942
8,000.00
September 22, 1942
4,000.00
The remainder of the principal amount of $16,100, credited on the note by Charles H. Hale on January 24, 1942, represented a gift from Charles H. Hale to petitioner in the amount of $3,900. The bulk of the repayments on the notes came from salary withdrawals from the Taylor-Hale Machinery Company. The records of Charles H. Hale show payments on the note by petitioner and none by Millicent H. Hale. The records of Charles H. Hale show *211 the transaction as a loan and gift to his son, petitioner. There was no mention of petitioner's wife, Millicent H. Hale, in the entries as originally made in the books of Charles H. Hale in 1941 and 1942 relating to the gift and loan transaction of January 13, 1941, between Charles H. Hale and petitioner. Some of the entires were made by Charles H. Hale and some of them were made by his secretary. Some time after the present income tax matter arose, petitioner's father inserted a mark, identified as "wf," immediately after the name or initial of his son in most of the entries which originally had been made in his handwriting. No such insertion was made in the entries in his secretary's handwriting. On January 2, 1941, petitioner owned 800 shares of stock in the Caterpillar Tractor Company. The stock was sold on January 2 and January 3, 1941, for the sum of $39,017.46. Of this amount $30,000 was invested in Taylor-Hale Machinery Company. Title to real estate owned by McCarthy, Jones and Woodard Company was acquired by Taylor-Hale Machinery Company after it commenced operations. The Taylor-Hale Machinery Company had also purchased from McCarthy, Jones and Woodard some of its furniture, *212 fixtures, trucks, and inventory. Petitioner furnished the funds for the very nominal down payment on the real estate. The purchase was partly financed by a mortgage through the Union Planters National Bank and Trust Company. Title was taken in the names of John Radford Taylor, Bertha Taylor, Millicent Hale, and petitioner. Each of the capital accounts of these individuals on the books of the Taylor-Hale Machinery Company for 1942 shows a credit of $1,540.86 for "Building Account." Sometime in 1941 John Radford Taylor, Bertha Taylor, and Millicent Hale each reimbursed petitioner to the extent of one-fourth of the amount he had expended for the down payment. In January, 1941, when the original capital investment accounts were recorded in the general ledger of Taylor-Hale Machinery Company, the accounts reflected credits of $50,000 each to J. R. Taylor Account No. 214, and H. M. Hale Account No. 213. Subsequently, the exact date not being known, the accounts were changed to read "Mr. and Mrs. J. R. Taylor," and "Mr. and Mrs. H. M. Hale," by the addition of the words "Mr. and Mrs." to each of the original accounts. The general ledger of Taylor-Hale Machinery Company contained no salary *213 account and no personal drawing account or any other account for either Bertha A. Taylor or Millicent H. Hale for the year 1941. Prior to the time the Taylor-Hale Machinery Company began operations it received a loan of $60,000 from the Caterpillar Tractor Company. The note evidencing the debt was signed by J. R. Taylor and petitioner. On January 6, 1941, Millicent H. Hale signed and delivered a note for $25,000, payable on demand to petitioner. The following credits appear on the note: January 6, 1942
$ 3,500.00
September 16, 1942
9,800.00
February 16, 1943
1,344.17
February 16, 1943
11,700.00 The first credit of $3,500 represents a gift from petitioner to his wife. The credit of $9,800 on September 16, 1942, represents the payments in cash from Millicent to petitioner, the source of these funds being a withdrawal from the profits of Taylor-Hale Machinery Company on September 12, 1942, in the amount of $9,830.05. This amount was charged to the investment account of Millicent which appeared on the 1942 books of the Taylor-Hale Machinery Company. Prior to the withdrawal, the account showed a credit balance of $54,830.05. The payment of $11,700 principal balance *214 and $1,344.17 interest on February 16, 1943, was likewise from funds withdrawn from Taylor-Hale Machinery Company. On September 12, 1942, petitioner and the Taylors also withdrew amounts sufficient to bring their investment accounts on the Taylor-Hale Machinery Company books to $45,000 each. During the year 1941 J. R. Taylor and petitioner each was credited with, and each drew $12,000 salary from Taylor-Hale Machinery Company. During 1941 there were neither cash distributions nor credits to the accounts of J. R. Taylor, petitioner, Bertha A. Taylor or Millicent H. Hale on account of the 1941 profits of Taylor-Hale Machinery Company. The profits were carried in Profit and Loss Account No. 250 on the books of the company. In contemplating the prospects of the business it was estimated that sales of from $500,000 to $600,000 a year might reasonably be anticipated and that a capital of $100,000 would be sufficient with the $60,000 credit from the Caterpillar Company to handle this amount of business. It was also anticipated that profits of $48,000 before salaries of $12,000 each to Taylor and petitioner were deducted could reasonably be expected. On this basis the annual amount of *215 earnings to be distributed was expected to be $24,000. War conditions changed the result. To meet the requirement for additional capital to conduct the war-expanded business, profits were not withdrawn and loans were secured from the bank and the Caterpillar Company. On April 20, 1941, the high point in the balance sheet statement of notes payable was reached, being an aggregate of $375,006.45. Taylor-Hale Machinery Company filed a partnership return, Form 1065, for the year 1941. The net income reported for the year was $341,939.50. The partnership of Taylor-Hale Machinery Company was dissolved as of December 31, 1942. Petitioner's wife received a distribution equivalent to a quarter share. An analysis of the investment account of Millicent H. Hale, as shown by the books of Taylor-Hale Machinery Company for 1942 discloses debits in 1942 as follows: Income Tax
$ 5,500.00
Income Tax
5,000.00
Income Tax
9,384.62
Income Tax
19,884.62
Check
5,000.00
Checks as of 9/12/42 to equal-
ize accounts at $45,000 each
9,830.05
Petitioner's wife was not a partner in the partnership known as Taylor-Hale Machinery Company for tax purposes, and the income from that *216 partnership during the year 1941 is attributable one-half to petitioner. Opinion Petitioner has several grounds for contending that this is a valid family partnership. He places strong reliance upon the fact that it is a new enterprise, and not a going concern in which the wife was included as a tax afterthought. But the fact that a business is new cannot be held by itself to validate a family partnership. The decisive test is the more general questions of whether the parties really and truly intended to join together as partners and who is the true earner of the income - an ultimate conclusion not grounded, as petitioner also seems to contend, upon testimony of the parties that such was the case. , reversed other grounds (C.C.A., 9th Cir.), . Keys to the solution of this problem have been recognized by the Supreme Court in , and , to be whether the alleged partner contributed capital which actually originated with him or contributed vital or managerial services to the partnership. In the case at bar the absence *217 of all the accepted criteria is quite apparent. The company for which the partnership was distributor had and enforced a policy which precluded any real participation by women. Such services performed by the wife as the parties testified to are clearly neither vital nor substantial; they were apparently not rendered to the partnership but are the sort which an interested wife would render for her husband. See . Nor can we find any substance to petitioner's contention that the portion of the capital contribution asserted to have been made by his wife originated with her. She did not dispose of her own property or invest any of it as her share in the partnership. Petitioner's father evidently advanced the money not to her but to him. Explanations and subsequent legal acrobatics to establish otherwise are not convincing. The conclusion must be that the entire Hale capital contribution was his. See . , where respondent had the burden of proof, is not to the contrary. We have accordingly concluded that petitioner's wife was not a partner for tax purposes. *218 Decision will be entered for the respondent